UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

SCOTT BARR, DDS, on behalf of itself
and other similarly situated,

     Plaintiff,

vs.

THE HARVARD DRUG GROUP, LLC, d/b/a
EXPERT-MED, a Michigan corporation,

     Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiff, SCOTT BARR, DDS (hereinafter "Plaintiff") brings this class action under

Rule 23 of the Federal Rules of Civil Procedure against THE HARVARD DRUG GROUP, LLC,

d/b/a EXPERT-MED (hereinafter "Defendant") for its violations of the Telephone Consumer

Protection Act, 47 U.S.C. § 227 (hereinafter "the TCPA"), and the regulations promulgated

thereunder.   In support, Plaintiff alleges as follows:

### PRELIMINARY STATEMENT

1.     Congress first addressed the growing problem of abusive telemarketing practices,

including the transmission of unsolicited advertisements via facsimile machines, in the

Telephone Consumer Protection Act of 1991 ("TCPA"), Pub. L. No. 102-243, 105 Stat. 2394

(1991) (codified at 47 U.S.C. § 227).   As the legislative history explained, because facsimile

machines "are designed to accept, process, and print all messages which arrive over their

dedicated lines," facsimile advertising imposes burdens on unwilling recipients that are distinct

from the burdens imposed by other types of advertising. H.R. Rep. No. 317, 102d Cong., 1st Sess. 11 (1991).

2.       In 2005, Congress amended the facsimile advertising provisions of the TCPA in the Junk Fax Prevention Act of 2005 ("JFPA"), Pub. L. No. 109-21, 119 Stat 359 (2005), among other things, by requiring that an "opt- out" notice be provided on advertisements transmitted by facsimile machines.   47 U.S.C § 227(b)(1)(C)(iii).   This notice is required on all facsimile advertisements, even those sent to persons who have had had an existing business relationship with the sender/advertiser and/or have provided prior consent to receive advertisements from the sender. 47 C.F.R. § 64.1200(a)(3)(iii) and (iv).

3.       Despite these requirements, Defendant, or some person authorized to do so on its behalf, has routinely and systematically caused to be sent out to Plaintiff and Class Members one or more "blasts" of fax advertisements for goods and/or services without the proper opt-out notice required by the TCPA and its regulations (hereinafter "opt-out notice").

4.       The TCPA provides a private cause of action for violation of its provisions and violations of the rules promulgated under the Act.   Defendant is therefore liable to Plaintiff and the proposed Class of similarly situated persons under the TCPA, and for Class Members and itself individually, Plaintiff seeks an injunction, requiring Defendant to cease all junk faxes and an award of statutory damages to Plaintiff and Class Members, together with costs and reasonable attorneys' fees.

### JURISDICTION AND VENUE

5.       This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

6.      Venue in this judicial district is proper under 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District.

7.      At all times material, this Court has had personal jurisdiction over Defendant because Defendant had had continuous and systematic contacts with Florida by actively transacting and soliciting business in Florida; and, among other things, upon information and belief, committing a tortious act in Florida by actively distributing and causing the unlawful faxing of advertisements to persons in Florida in violation of the TCPA. Defendant engaged in this activity (a) intending that the faxes would be received by fax machines in Florida; and (b) disseminating them in Florida for the purpose of benefitting itself and others monetarily.

## PARTIES

8.      Plaintiff's principal place of business is in Broward County, Florida. Plaintiff is a citizen of the state of Florida.

9.      Class Members are citizens of the state of Florida.

10.      Upon information and belief, Defendant is a Michigan corporation, and Defendant is a citizen of the state of Michigan. Upon information and belief, it is located at 31778 Enterprise Drive, Livonia, Michigan 48150. It operates or is affiliated with the Internet website, www.expertmed.com and www.theharvarddruggroup.com, and appears to have a business model whereby it sends unsolicited "leads" obtained through that website, via fax, to local businesses.

11.      Defendant, directly or else through other persons acting on its behalf, conspired to, agreed to, contributed to, assisted with, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the junk faxes that are the subject matter of this Complaint.

## THE TCPA AND CORRESPONDING REGULATIONS

12.     The Telephone Consumer Protection Act of 1991 ("TCPA"), Pub. L. 102-243, § 3(a), added Section 227 to Title 47 of the United States Code, 47 U.S.C. § 227.

13.     In pertinent part, 47 U.S.C. § 227(b) provides "[i]t shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine[.]"

14.     An "unsolicited advertisement" is defined in the TCPA as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227(a)(5).  Under TCPA regulations, "The term advertisement means any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1).

15.     In 2005, Congress amended the facsimile advertising provisions of the TCPA in the JFPA.  Among other provisions, the JFPA excludes from the general ban on unsolicited advertisements those facsimiles that are transmitted to persons with whom the sender has an "established business relationship" ("EBR").  To come within the statutory exclusion, the sender must include, among other things, specified information on the advertisement that enables the recipient to opt out of receiving any future facsimile advertisements from that sender.  47 U.S.C. § 227(b)(1)(C)(iii).

16.     In April 2006, pursuant to Congress' direction, the Federal Communications Commission ("FCC") amended its TCPA regulations to implement the JFPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order and Third Order on Reconsideration, 21 FCC Rcd 3787 (2006) ("*2006 Rulemaking Order*"),

*petition for review dismissed*, *Biggerstaff v. FCC*, 511 F.3d 178 (D.C. Cir. 2007), *recon. granted in part*, 23 FCC Rcd 15059 (2008).  The amended regulations provide that "[n]o person or entity may…[u]se a telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine, unless…[t]he advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements." 47 C.F.R. § 64.1200(a)(3)(iii).

17.     In enacting 47 U.S.C. § 227(b), Congress concluded that a prohibition on unsolicited facsimile advertisements is "the *minimum* necessary to protect unwilling recipients from receiving fax messages that are detrimental to the owner's uses of his or her fax machine." S. Rep. No. 178, 102d Cong., 1st Sess. 6 (1991), 1991 U.S.C.C.A.N 1969, 1975-76 (emphasis added).

18.     Accordingly, the amended regulations further provide the additional protection that "[a] facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender" likewise must include an opt-out notice. 47 C.F.R. § 64.1200(a)(3)(iv).

19.     The opt-out notice required by § 64.1200(a)(4)(iv) for facsimile advertisements sent with prior express invitation or permission—those not technically falling under the definition of "unsolicited advertisement"—therefore still must contain the same information as the notice required for facsimile advertisements sent to recipients on the basis of an EBR or to those recipients who did not provide permission or consent to receive the advertising. *See* 47 C.F.R. § 64.1200(a)(3)(iv).

20.     In the text of the order adopting § 64.1200(a)(3)(iv), the FCC explained that it was requiring opt-out notices on "facsimile advertisements to consumers from whom they

obtained permission" so as to provide a mechanism "to allow consumers to stop unwanted faxes in the future." *2006 Rulemaking Order*, 21 FCC Rcd at 3812 (¶ 48).

21.     Under the TCPA and 47 C.F.R. § 64.1200(a)(3)(iii), the opt-out notice required for all facsimile advertisements must meet the following criteria:

(A)     The notice is clear and conspicuous and on the first page of the advertisement;

(B)     The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a)(3)(v) of this section is unlawful;

(C)     The notice sets forth the requirements for an opt-out request under paragraph (a)(3)(v) of this section;

(D) The notice includes--

(1) A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and

(2) If neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a Web site address or e-mail address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement. A local telephone number also shall constitute a cost-free mechanism so long as recipients are local and will not incur any long distance or other separate charges for calls made to such number; and

(E)     The telephone and facsimile numbers and cost- mechanism identified in the notice must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week.

### DEFENDANT'S UNLAWFUL COURSE OF CONDUCT

22.     Upon information and belief, Defendant has, from prior to the date of the filing of the instant Complaint through the present, systematically and under a uniform policy and procedure sent and/or arranged to be sent hundreds, or thousands, of fax advertisements, advertising the commercial availability or quality of any property, goods, or services, to fax machines and/or computers to fax machines throughout the United States, including those of Plaintiff and Class Members, which did not contain an opt-out notice as required by the TCPA.

23.     The fax advertisements that Defendant causes to be sent contain preprinted, standardized text and format.

24.     Defendant's advertising by fax was not sporadic or unorganized, but instead was part of a well-organized mass advertising tactic and campaign.  Defendant appears to have a business model whereby it sends unsolicited "leads" obtained through that website, via fax, to local businesses.   As a result, upon information and belief, Plaintiff asserts that the fax ads at issue were "unsolicited advertisements" within the meaning of the TCPA.

25.     All of Defendant's fax ads however whether "unsolicited advertisements" or not (because of prior invitation or permission) or are exempt for the absolute ban because of an EBR, to be lawful under the TCPA, they still must have the required opt-out notice, which uniformly they did not.  Each fax advertisement sent to Plaintiff and to each Class Member routinely failed to include the opt-out notice required by the TCPA and its regulations.

26.     An exemplar of one of the fax advertisements that Defendant has sent or caused to be sent to Plaintiff and Class Members is attached hereto as Exhibit A.  The opt out-notice on Exhibit A omits the required statement that "the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph [47 C.F.R.§64.1200] (a)(3)(v) of this section is unlawful." *See* 47 C.F.R. § 64.1200(a)(3)(iii)(B).   Exhibit A also does not include the mandatory disclosure indicating how a recipient must opt out of receiving future facsimile advertisements as set forth in 47 C.F.R.§64.1200](a)(3)(iii)(C) and (3)(v).

27.     Upon information and belief, Defendant's sending of the foregoing fax and others, or Defendant's causing them to be sent, was conscious and deliberate.   Defendant either

directly participated in sending the faxes itself or an agent or contractor or third party did so on its behalf with Defendant's knowledge.

28.     Upon information and belief, Defendant's sending of the faxes or its causing them to be sent was performed without due care; with reckless disregard concerning the rights and obligations under the TCPA; and/or when Defendant had reason to know, or should have known, that its conduct or the conduct of those acting on its behalf could constitute a violation of the statute.

29.     Upon information and belief, Defendant's course of conduct set out above is ongoing and adverse to the public interest and the policies underlying the TCPA. Unless enjoined and restrained by an order of this Court, Defendant will continue to engage in the unlawful acts and practices set out herein.  Such actions and conduct by Defendant have violated the TCPA rights of Plaintiff and Class Members and Defendant's duties to them under the TCPA, and unless enjoined by the Court Defendant will continue to aggrieve Plaintiff and Class Members and others in the future.

## FACTS CONCERNING THE REPRESENTATIVE PLAINTIFF

30.     Plaintiff still has and had, at all relevant times to this action, telephone service at 954-327-7450 at its place of business at Scott Barr, DDS, 300 NW 70 Avenue, Suite 206A, Plantation, FL 33317. Plaintiff receives facsimile transmissions (hereinafter "faxes") at this number, using a telephone facsimile machine (hereinafter "fax machine").

31.     Upon information and belief, on or about April 30, 2013, Defendant, without Plaintiff's express invitation or permission, arranged for and/or caused a telephone facsimile machine, computer, or other device to send an unsolicited fax advertisement, advertising the commercial availability or quality of any property, goods, or services, to Plaintiff's fax machine

located at its principal place of business. A copy of the fax advertisement is attached hereto as Exhibit A and is incorporated herein by reference.

32.     Exhibit A was wholly unsolicited in that Defendant sent it to Plaintiff without Plaintiff's express invitation or permission. In addition, as stated above, Exhibit A does not contain the opt-out notice required by the TCPA.

## CLASS ALLEGATIONS

33.     Plaintiff brings this class action under rules 23(a) and 23(b)(2) & (b)(3) of the Federal Rules of Civil Procedure on behalf of itself and of a similarly situated "Class" or "Class Members" defined as:

> All persons in the United States from four years prior to the date of the filing of the instant Complaint through the date of the filing of the instant Complaint to whom Defendant sent or caused to be sent a facsimile advertisement in the form attached as Exhibit A, promoting the commercial availability or quality of any property, goods, or services.

> Excluded from the Class are: any Defendant, and any subsidiary or affiliate of that Defendant, and the directors, officers and employees of that Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

34.     This action has been brought and may properly be maintained as a class action against Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

35.     **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conducted consisted of a standardized fax campaign and widely disseminated standardized fax

electronically sent to particular telephone numbers, Plaintiff believes, at a minimum, there are hundreds of Class Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

36.     Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's fax and marketing records.

37.     Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

38.     **Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

(a) Whether Defendant or someone acting on Defendant's behalf sent fax advertisements promoting the commercial availability or quality of any property, goods, or services to Plaintiff and Class Members and the legal relationship between Defendant and any person sending those faxes on its behalf;

(b)   Whether the fax advertisements sent to Plaintiff and Class Members were sent via mass or organized advertising campaigns and how Defendant acquired the names and fax numbers of Plaintiff and Class Members;

(c)   Whether the fax advertisements sent to Plaintiff and Class Members contained the opt-out notice required by the TCPA and its regulations;

(d)    Whether the fax advertisements sent to Plaintiff and Class Members violate the TCPA and its regulations;

(e)   Whether Defendant willfully or knowingly violated the TCPA or the rules prescribed under it;

(f)   Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendant's acts and conduct; and

(g)   Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct.

39.    One or more questions or issues of law and/or fact regarding Defendant's liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Rule 23(c)(4).

40.    **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

41.    Plaintiff and members of the Class each received at least one fax advertisement, advertising the commercial availability or quality of any property, goods, or services, which contained no purported opt-out notice, which Defendant sent or caused to be sent to Plaintiff and the members of the Class.

42. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel, who are competent and experienced in litigation in the federal courts, TCPA litigation and class action litigation.

43. **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendant by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

44. **Class-Wide Injunctive Relief and Rule 23(b)(2):** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted

under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole.  Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendant's' ongoing violations of the TCPA, and to order Defendant to provide notice to them of their rights under the TCPA to statutory damages and to be free from unwanted faxes

<u>COUNT I</u>
<u>Telephone Consumer Protection Act</u>
<u>(Violation of 47 U.S.C. § 227)</u>

45.     Plaintiff repeats each and every allegation contained in all of the above paragraphs and incorporates such allegations by reference.

46.     Plaintiff brings this action individually and on behalf of the Class defined above against Defendant for its violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227) and the rules prescribed under it by the FCC.

47.     At all times material to this action, Defendant was a person that used or caused to be used a "telephone facsimile machine, computer, or other device" to send, to a "telephone facsimile machine" an "unsolicited advertisement" or an "advertisement" within the meaning of the TCPA and its regulations.

48.     Defendant sent or caused to be sent hundreds or thousands of these advertisements exemplified by Exhibit A.  Plaintiff and each Class Members received at least one of them.

49.     Each of the foregoing advertisements violated the TCPA because they failed to contain the opt-out notice required by 47 U.S.C § 227(b)(1)(C)(iii); 47 C.F.R. § 64.1200(a)(3)(iv); and 47 C.F.R. § 64.1200(a)(3)(iii).

50.     Accordingly, Plaintiff and the members of the Class are entitled to statutory damages under 47 U.S.C. § 227(b).

51.     If it is found that Defendant willfully and/or knowingly sent and/or caused to be sent fax advertisements to Plaintiff and the members of Class in violation of the TCPA, Plaintiff requests an increase by the Court of the damage award against Defendant, described in the preceding paragraph, to three times the amount available under 47 U.S.C. § 227(b)(3)(B), as authorized by 47 U.S.C. § 227(b)(3) for willful or knowing violations.

52.     Furthermore, Plaintiff and members of the Class are entitled to an order enjoining Defendant's violations of the TCPA under 47 U.S.C. § 227(b), because: Defendant has violated their TCPA rights and its duties owed to them under the statute; Defendant's violations continue and will continue to violate the statutory rights of Plaintiff and Class Members and others in the future; there is no fully adequate remedy at law for Defendant's conduct; irreparable injury will be suffered unless an injunction is issued to stop Defendant from violating the TCPA; any potential injury to Defendant attributable to an injunction is outweighed by the injury that Plaintiff and Class Members and the public will suffer if such injunction is not issued; and the injunction would not be adverse to the public interest.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in favor of it and the Class and against Defendant, for:

A.     An order certifying the Class under Rule 23(a); and Rule 23 (b)(2), (b)(3) or both, or as to particular issues under Rule 23(c)(4); and appointing Plaintiff as the

representative of the Class; and appointing the law firms representing Plaintiff as counsel for the Class;

B.      An award to Plaintiff and the members of the Class of statutory damages pursuant to 47 U.S.C. § 227(b), for Defendant's violations of that statute.

C.      If it is found that Defendant willfully and/or knowingly sent and/or caused to be sent fax advertisements to the Class in violation of the TCPA, an increase by the Court of the award of statutory damages pursuant to 47 U.S.C. § 227(b) prayed for to three times that amount described in the previous paragraph, as authorized by 47 U.S.C. § 227(b)(3), for willful and/or knowing violations.

D.      An injunction against Defendant, prohibiting Defendant from committing further violations of the TCPA and the regulations promulgated thereunder;

E.      An award of attorney's fees and costs; and,

F.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone or fax numbers associated with the Defendant and the communication or transmittal of advertisements as alleged herein.

Dated: September 17, 2013                Respectfully submitted,

*/s/ Steven R. Jaffe*
Steven R. Jaffe (Florida Bar No. 390770)
Email: steve@pathtojustice.com
Seth M. Lehrman (Florida Bar No. 132896)
Email: seth@pathtojustice.com
Mark S. Fistos (Florida Bar No. 909191)
Email: mark@pathtojustice.com
Gabriel F. Zambrano (Florida Bar No. 005710)
Email: gabe@pathtojustice.com
FARMER, JAFFE, WEISSING, EDWARDS
FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Facsimile: (954) 524-2822

Scott D. Owens, Esq.
Florida Bar No. 0597651
Email: scott@scottdowens.com
SCOTT D. OWENS, P.A.
664 E. Hallandale Beach Blvd.
Hallandale, FL 33009
Telephone: (954) 589-0588
Facsimile: (954)337-0666

*Attorneys for Plaintiff*

Scott Barr, DDS, v. The Harvard Drug Group, LLC, d/b/a Expert-Med

# Exhibit A

Fax Server          4/30/2013 9:38:37 AM   PAGE   1/001   Fax Server



Gloria Brooks
800.447.5050.x6311
Fax:734.743.7311
gbrooks@expert-med.com

## 1-800-447-5050 ext. 6311

| Item | Description | Price |
|---|---|---|
| 437015 | KETOROLAC (Toradol) 60MG/2ML IN #10x2ML | $9.80 |
| 655137 | KETOROLAC (Toradol) 60MG/2ML INJ #25 | $24.16 |
| 014729 | AMOXICILLIN(Amoxil) 500MG CAP # 500 3+1 free | $49.95/500 |
| | AMOXICILLIN(Amoxil) 500MG CAP # 500 5+2 free | $49.95/500 |
| 362145 | CEFTRIAXONE (Rocephin) 500MG INJ #10X10ML | $16.68 |
| 008787 | CEFTRIAXONE (Rocephin) 1GM INJ #10X10ML | $21.31 |
| 550231 | FEXOFENADINE (Allegra) OTC #15  EXPIRES 9/13 Each | $2.14/15 |
| 297097 | CETIRIZINE (Zyrtec) 10MG TAB #100 | $4.25 |
| 432013 | FLUTICASONE NASAL SPRAY (Flonase) ST 16GM | $9.67 |
| | | |
| | Z-PACKS (AZITHROMYCIN) | |
| 305168 | 250MG 3 CARDS OF 6 TABS/CARD | $9.95 |
| 305172 | 500MG 3 CARDS OF 3 TABS/CARD | $9.95 |
| 002072 | BANDAID ADH STRIP SHEER 1X3 | $1.62/100 |
| 014691 | ALCOHOL PREP PADS MEDIUM STERILE | $.99/100 |
| | | |
| | NITRILE PF GLOVES NS/PF (S/M/L/XL) | $5.99/100 |
| | 3CC SYRINGE W/NDL (Various Sizes) | $6.99/100 |
| | | |
| 000074 | SPECIALTY SYRINGE W/NDL 1/2cc - 30 GA x 1/2" | $12.95/100 |
| 252024 | SPECIALTY SYRINGE W/NDL 1/2cc - 31 GA x 5/16" | $12.95/100 |
| 252032 | SPECIALTY SYRINGE W/NDL 3/10cc - 31 GA x 5/16" | $12.95/100 |

Expert Med | 31778 Enterprise Dr., Livonia, MI 48150 | 800.447.5050
Prices and availability subject to change without notice. Short-dated items are not returnable.
Product pictures displayed do not always represent actual product.
If you'd like to be removed from our fax blast list, call toll free 800.675.0123 ext. 2000, or fax 734.743.7000